UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY WALPERT,                                    :
                                                 :        13 Civ. 05006 (PGG)
                              Plaintiff,          :
                                                 :
                                                 :
                   - against –                   :
                                                 :
                                                 :
SYED JAFFREY and WINGATE CAPITAL, INC.           :
a/k/a WINGATE CAPITAL NEW YORK, and US           :
DEFENSE FUND MANAGEMENT, LLC,                    :
                                                 :
                              Defendant.          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


**DEFENDANT'S RESPONSE TO PLAINTIFF'S MEMORANDUM OF LAW
REQUESTING DEFAULT JUDGMENT AND TURNOVER ORDER OR
PREJUDGMENT ATTACHMENT AGAINST DEFENDANTS AND REQUEST FOR
JAFFREY'S DEPOSITION TO BE TAKEN IN LONDON OR BY REMOTE MEANS**



**MESSNER REEVES LLP**
Deborah J. Denenberg, Esq.
733 Third Avenue, 15th Floor
New York, New York 10017
Te1:    (646) 663-1860
Fax:    (646) 663-1895
*Attorney for Defendants*

## TABLE OF CONTENTS

I.   SUMMARY OF ARGUMENT ................................................................. 1

II.  BACKGROUND AND FACTS ............................................................... 2

III. ARGUMENT AND LEGAL AUTHORITY ............................................ 3

    A.   JAFFREY IS ENTITLED TO HAVE HIS DEPOSITION TAKEN BY
        REMOTE MEANS BECAUSE OF HIS IMMIGRATION STATUS AND
        HIS INABILITY TO LEGALLY RETURN TO THE UNITED STATES ........... 3

    B.   DEFAULT JUDGMENT SHOULD NOT BE ENTERED AGAINST
        DEFENDANTS .......................................................................................... 7

        1.   Defendants' Default Was Not Willful ................................................ 9

        2.   Ignoring the Default Judgment Would Not Prejudice Plaintiff ................. 12

        3.   Defendants Have Meritorious Defenses ........................................... 12

    C.   DEFENDANT WINGATE'S COUNTERCLAIM FOR COMMERCIAL
        RENT ...................................................................................................... 19

    D.   PLAINTIFF IS NOT ENTITLED TO A TURNOVER ORDER OR ASSET
        ATTACHMENT ....................................................................................... 20

IV.  CONCLUSION .................................................................................... 22

# TABLE OF AUTHORITIES

<u>Cases</u>

*Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591 (S.D.N.Y. 1994) .............................. 4, 6

*Allis-Chalmers Corp. v. U.S. Steel Corp.*, 405 N.Y.S.2d 924 (N.Y. 1978) .................................. 11

*Angamarca v. Da Giro, Inc.*, 2012 WL 5077480 (S.D.N.Y. Oct. 15, 2012) ................................ 5-7

*Badian v. Brandaid Commc'ns Corp.*, 2004 WL 1933573 (S.D.N.Y. Aug. 30,
    2004) .................................................................................................................................. 8-9

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 2004 WL 1406076
    (S.D. N.Y. 2004) ................................................................................................................... 15

*Beckwith v. Beckwith*, 952 N.Y.S.2d 796 (3d Dept. 2012) ......................................................... 15

*Bigda v. Fischbach Corp.*, 898 F. Supp. 1004 (S.D.N.Y. 1995) aff'd, 101 F.3d 108
    (2d Cir. 1996) ...................................................................................................................... 19

*Capital Ventures Intern. v. Republic of Argentina*, 443 F.3d 214 (2d Cir. 2006) ........................ 21

*Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d
    1062 (2d Cir. 1979) ................................................................................................................ 9

*Clarkson Co. Ltd. v. Shaheen*, 533 F. Supp. 905 (S.D.N.Y. 1982) ......................................... 20-21

*Clem v. Allied Lines Int'l Corp.*, 102 F.R.D. 938 (S.D.N.Y. 1984) ............................................... 7

*David v. No. 1 Mktg. Serv., Inc.,* 979 N.Y.S.2d 375 (2d Dept. 2014) .......................................... 17

*EEOC v. Lockheed Martin*, 2007 WL 1521252 (D. Haw. May 22, 2007) ...................................... 9

*Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) ................................................... 8, 9, 12

*Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385 (S.D.N.Y.
    2011) .................................................................................................................................. 4-5

*Flaks v. Koegel*, 504 F.2d 702 (2d Cir. 1974) ............................................................................ 7

*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1 (1988) .................................................... 17

*Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232 (W.D.N.Y. 2014) .................................... 17

*Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 767 F. Supp. 2d 480
    (S.D.N.Y. 2011) .................................................................................................................... 8

*Interpool Ltd. v. Patterson*, 890 F. Supp. 259 (S.D.N.Y. 1995) ........................................... 20-21

*Matter of Saxton*, 673 N.Y.S.2d 625 (Surr.Ct.Broome Co.1998) ............................................. 13

*McKenna v. Double G Development Corp.*, 674 N.Y.S.2d 356 (1st Dept. 1998) ......................... 15

*Mota v. Imperial Parking Systems*, 2010 WL 3377497 (S.D. N.Y. 2010) ................................... 15

*Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821, 830
    (S.D.N.Y.1969) ............................................................................................................... 19

*Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362 (2d Cir. 2003) ................................... 15

*Orlosky v. Empire Sec. Systems, Inc.*, 657 N.Y.S.2d 840 (3d Dept. 1997) ................................ 15

*Palmieri v. Town of Babylon*, 277 Fed. Appx. 72 (2d Cir. 2008) ............................................... 8

*Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167 (2d Cir. 2001) ............................................... 8

*Rosario v. Anson*, 2014 WL 4418052 (N.D.N.Y. Sept. 8, 2014) .............................................. 10

*Schozer v. William Penn Life Ins. Co. of N.Y.*, 84 N.Y.2d 639 (App. 1994) ............................ 13

*Stephens v. Seiu, AFL-CIO*, 2011 WL 2940490 (S.D.N.Y. July 19, 2011) ................................. 5

*Ticor Title Guarantee Co. v. E.F.D. Capital Group Inc.*, 621 N.Y.S.2d 128 (3d
    Dept. 1994) ..................................................................................................................... 15

*VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 967 N.Y.S.2d
    338 (N.Y. App. 2013) ..................................................................................................... 21

Statutes

New York PL § 170.05 ............................................................................................................. 15

New York PL § 170.00(4) ......................................................................................................... 16

Other Authorities

*Attachment*, Black's Law Dictionary (9th ed. 2009) ................................................................. 21

*Forgery*, Black's Law Dictionary (9th ed. 2009) ..................................................................... 15

N.Y. Const., art. I, § 6 ................................................................................................................ 7

U.S. Const. amend XIV ............................................................................................................. 7

U.S. Const. amend. V ................................................................................................................ 7

<u>Rules</u>

Fed. R. Civ. P. 28(b)(1)(C) ................................................................................................4

Fed. R. Civ. P. 30(b)(4) ..............................................................................................3-4, 11

Fed. R. Civ. P. 37(b)(2)(C) ...........................................................................................7

Fed. R. Civ. P. 43(a) .................................................................................................5-6

Fed. R. Civ. P. 55 .......................................................................................................8

N.Y. C.P.L.R. § 3106 (McKinney 2014) ........................................................................11

N.Y. C.P.L.R. § 5225(a) (McKinney 2014) ............................................................20, 22

N.Y. C.P.L.R. § 6201 (McKinney 2014) ........................................................................22

COMES NOW Defendants, Syed Jaffrey and Wingate Capital, Inc. a/k/a Wingate Capital New York, and US Defense Fund Management LLC ("USDFM"), by and through counsel, Messner Reeves LLP, hereby submit this Memorandum of Law in response to Plaintiff Gary Walpert's Memorandum of Law in Support of His Motion for a Default Judgment and a Turnover Order or Prejudgment Attachment Against Defendants ("Plaintiff's Motion"), request that the Court allow Defendant Jaffrey to appear for his deposition by remote means pursuant to Fed. R. Civ. P. 30 and that Plaintiff's Motion be denied, and in support thereof state as follows:

## I.   **SUMMARY OF ARGUMENT**

Pursuant to Fed. R. Civ. P. 30, Jaffrey is entitled to have his deposition taken by remote means because of his immigration status and his inability to legally return to the United States. There is no absolute rule stating that a party to the litigation has to be deposed in the location where the action was brought, and case law supports an order from the Court to depose Jaffrey in London – or another foreign location – via telephone or other remote means.

This Court should deny Plaintiff's Motion, and not order default judgment against Defendants, because (1) Defendants have not willfully defaulted, (2) the Plaintiff will not be prejudiced by the denial of the application for default against Defendants, and (3) Defendants have numerous meritorious defenses in this matter.

Additionally, the Court should deny Plaintiff's request for a turnover order and prejudgment attachment against Defendants because there has been no trial of the merits or entry of a final judgment in this matter, and Plaintiff failed to meet his burden with regard to why he is entitled to attachment of Defendants' property.

1

## II.   BACKGROUND AND FACTS

1.  Beginning in February 2010, Mr. Syed Mohammad Razi Haider Jaffrey ["Jaffrey"] was
    residing in the United States on an L-1 Visa. (See, Jaffrey Visa, attached as **Exhibit "A"**
    and Affidavit of Jaffrey, attached as **Exhibit "B"** ).

2.  Upon information and belief, Jaffrey and Plaintiff became friends in 2010 and would
    often see each other socially, including in family dinner settings.

3.  Jaffrey's L-1 Visa expired on December 22, 2012 and was extended for six months until
    June 19, 2013.

4.  Upon information and belief, there is a grace period under which an immigrant may stay
    beyond their Visa but the Visa must be renewed from outside of the United States.

5.  Due to the expiration of his L-1 Visa, Jaffrey left the country while his immigration
    attorney completes the paperwork for a new L-1 Visa.

6.  On July 26, 2014, Defendant's Counsel, Deborah J. Denenberg, experienced a family
    issue.[1] (See Affidavit of Deborah J. Denenberg, Esq., attached as **Exhibit "C"**).

7.  Defense counsel, Ms. Denenberg, contacted opposing counsel and requested that
    Jaffrey's originally scheduled deposition on August 8, 2014 be continued to a future date
    so that she could address her family issue and help care for her ailing mother.

8.  Opposing counsel agreed to continue the deposition date and Jaffrey's deposition was
    rescheduled for August 21, 2014.

---

[1] Ms. Denenberg's mother fell and fractured her hip.  She underwent hip replacement surgery on July 27, 2014, was
discharged from the hospital on August 1, 2014, and was transferred to an in-patient rehabilitation facility thereafter.
Since the discharge from the rehabilitation facility, her mother has returned to the hospital on several occasions and
has most recently been in Long Island Jewish Medical Center since September 18th with a diagnosis of Multiple
Myeloma.

9.  On August 15, 2014, when defense counsel learned that Jaffrey's L-1 Visa might not go through by August 21, 2014, she immediately notified opposing counsel.

10. On August 15, 2014, defense counsel offered to take Jaffrey's deposition in London via Skype or some other electronic means, however, opposing counsel declined this offer. Additionally, defense counsel offered to produce Mr. Kamal Jaffrey, who was scheduled to be taken at a later date in August, on August 21, 2014 in place of Jaffrey. This offer was also declined by opposing counsel.

11. Jaffrey is actively working with his immigration attorney, Mr. Matthew Maiona, to obtain a new visa. (See, Affidavit of Matthew J. Maiona, Esq., attached as **Exhibit "D"**).

12. Jaffrey cannot legally be in the United States while his L-1 Visa application is pending.

13. The deposition of Plaintiff, Gary Walpert, was not taken on August 20, 2014 according to the amended schedule of the parties in this matter.

## III.   ARGUMENT AND LEGAL AUTHORITY

### A.  JAFFREY IS ENTITLED TO HAVE HIS DEPOSITION TAKEN BY REMOTE MEANS BECAUSE OF HIS IMMIGRATION STATUS AND HIS INABILITY TO LEGALLY RETURN TO THE UNITED STATES

There is no absolute rule stating that a party to the litigation has to be deposed in the location where the action was brought. *See* Fed. R. Civ. P. 30(b)(4); *See Stephens v. Seiu, AFL-CIO*, No. CV-0596(JFB)(AKT), 2011 WL 2940490, at * 1 (S.D.N.Y. July 19, 2011) (citations omitted). Furthermore, a court may order a deposition to be completed by telephone or other remote means. *Id.*

Fed. R. Civ. P. 30(b)(4) provides that:

The parties may stipulate--or the court may on motion order--that a deposition be taken by telephone or other remote means. For the purpose of this rule and Rules 28(a), 37(a)(2), and 37(b)(1), the deposition takes place where the deponent answers the questions.

However, Rule 30(b)(4) of the Federal Rules of Civil Procedure "does not specify the standard for evaluating motions to have a deposition conducted telephonically or remotely, and the courts in this Circuit generally apply different standards depending on whether the party seeking the deposition or the deponent – as an alternative to traveling to the district in which the action was filed – requests that the deposition occur remotely." *See Estate of Gerasimenko v. Cape Wind Trading Co.*, 272 F.R.D. 385, 387 (S.D.N.Y. 2011) (citations omitted).   Fed. R. Civ. P. 28(b)(1)(C) states that depositions may be taken in a foreign country "on notice before a person authorized to administer oaths either by federal law or by the law in the place of examination."

The Plaintiff in this matter will likely argue that the standard for a deponent who seeks to have his deposition taken by telephone, while abroad, must demonstrate that holding his deposition in the forum of the action would impose an extreme hardship on him. *Clem v. Allied Lines Int'l Corp.*, 102 F.R.D. 938, 940 (S.D.N.Y. 1984).   However, this matter can be distinguished from *Clem* because unlike the plaintiff in *Clem*, who was an American citizen working abroad, Jaffrey is unable to return to the United States because of his immigration status. *See* 102 F.R.D. at 939. Therefore, the *Clem* standard does not apply to this matter. *See Estate of Gerasimenko*, 272 F.R.D. at 387  (finding that plaintiff sufficiently – through supporting documentation – established that it would be a financial burden to be deposed in New York and applying a test where plaintiff's hardship was weighed against the prejudice that ordering a remote deposition would have on the defendants).

Courts have permitted nonresident deponents to be deposed where they live, when they are able to show financial or other hardship. *See Abdullah v. Sheridan Square Press, Inc.*, 154 F.R.D. 591, 592-94 (S.D.N.Y. 1994) (where plaintiff lived in London, had no choice of forum, had meager

financial resources, and would face prejudice with respect to an asylum application in the United Kingdom if he left the country, defendant was required to travel to London for his deposition); *See also Estate of Gerasimenko*, 272 F.R.D. at 387.

In *Stephens*, the court found that the plaintiff, who had been deported back to Jamaica and could not return to the United States, could be deposed by telephone or video-conference/videotaped. 2011 WL 2940490 at * 3. The court ordered that the deposition be conducted by video-conference and videotaped if the plaintiff intended "to treat her upcoming deposition as a trial-preservation deposition and to offer that testimony in place of live testimony". *Id.* The decision as to whether the video-conference/videotaped deposition would be permitted at trial would be made by the lower court judge in the matter. *Id.* Additionally, the cost of conducting the deposition by telephone or video-conference would be borne by the plaintiff. *Id.* (citations omitted).

The court denied a motion to dismiss plaintiff's case due to his failure to appear in-person for his deposition and held that the plaintiff could appear remotely for his deposition and could not be compelled to appear in-person for trial in *Angamarca v. Da Giro, Inc.*, No. 10 Civ. 4792(RLE), 2012 WL 5077480, at * 3 (S.D.N.Y. Oct. 15, 2012). The plaintiff had returned to his native Ecuador and was unable to appear in person for his deposition and trial because of his status as an undocumented immigrant. *Id.* at * 1. The court continued by stating that there is an exception, under Rule 43(a) of the Federal Rules of Civil Procedure[2], to the general rule that a witness's testimony must be taken in open court. *Id.* Under this exception, Fed. R. Civ. P. 43(a) allows testimony in open court by contemporaneous transmission from a different location. *Id.* The court

---

[2] Fed. R. Civ. P. 43(a) provides the following exception to the general rule that a witness's testimony must be taken in open court: "for good cause in compelling circumstances and with appropriate safeguards, the court may permit testimony in open court by contemporaneous transmission from a different location."

found that the "legal infeasibility of attending a deposition or trial in person because of one's immigration status rises to the level of compelling circumstances since [the plaintiff] cannot be compelled to attend without either securing requisite authorization or violating immigration laws." *Id.* Additionally, the court pointed out that the defendants appeared to have been aware of the plaintiff's undocumented status and his departure to Ecuador should not have come as a surprise. *Id.* at * 2.

   *Abdullah*, *Stephens*, and *Angamarca* all concern plaintiffs who have brought forward claims of action and chosen a specific forum in which to sue. *Abdullah*, 154 F.R.D. at 591; *Stephens*, 2011 WL 2940490 at * 1; *Angamarca*, 2012 WL 5077480 at * 1. The courts in these cases have allowed the plaintiffs to have their depositions taken in foreign countries, by telephone or other remote means. *Abdullah*, 154 F.R.D. at 593; *Stephens*, 2011 WL 2940490 at * 3; *Angamarca*, 2012 WL 5077480 at * 3. Although Jaffrey is not a plaintiff in this matter, the principle of these cases still apply to him. Due to Jaffrey's immigration status and the processing of his L-1 Visa application, he could not appear for his deposition scheduled on August 21, 2014. Similarly, the plaintiffs in *Abdullah*, *Stephens*, and *Angamarca* could not appear for depositions in New York due to their immigration status. *Abdullah*, 154 F.R.D. at 593; *Stephens*, 2011 WL 2940490 at * 1; *Angamarca*, 2012 WL 5077480 at * 1. More importantly, if these cases apply to plaintiffs who brought an action within a forum and who specifically availed themselves to that forum, they should most certainly apply to Jaffrey – who was forced into court to address claims brought by the plaintiff in the forum of plaintiff's choosing. *See Abdullah*, 154 F.R.D. at 592 (quotation omitted) (stating "[a]s a normal rule plaintiff will be required to make himself available for examination in the district in which he has brought suit. Since he selected the forum, he will not be heard to complain about having to appear there for a deposition."). Just as the defendant in

*Angamarca* was likely aware of the plaintiff's undocumented status and his departure to Ecuador, so should the Plaintiff in this matter – due to the friendship Jaffrey and Plaintiff shared prior to this litigation – have been aware of Jaffrey's immigration status and the possibility that his L-1 Visa would expire. *See Angamarca*, 2012 WL 5077480 at * 2.

Even if the *Clem* standard of "extreme hardship" is applied, Jaffrey still meets his burden for a deponent who seeks to have his deposition taken by telephone or other remote means because holding Jaffrey's deposition in New York would impose an extreme hardship on him. *See* 102 F.R.D. at 940.  As Jaffrey's immigration attorney states in his Affidavit, Jaffrey cannot legally come into the United States – not for a deposition, not for trial, not to reside – until he gets his L-1 Visa renewed. (Maiona Affidavit at PP. 1, ¶ 10).  If Jaffrey does come into the country, he risks being barred from the United States for a period of ten years. (*Id.* at PP. 1, ¶ 10).

Additionally, even as an undocumented immigrant, Jaffrey has the right to due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 6 of the New York State Constitution.  U.S. Const. amend. V &  XIV; N.Y. Const., art. I, § 6.

## B.  DEFAULT JUDGMENT SHOULD NOT BE ENTERED AGAINST DEFENDANTS

The Plaintiff has requested that the Court find Defendants in default for failing to comply with its discovery orders.  Plaintiff argues that the default judgment should be ordered pursuant to Fed. R. Civ. P. 37(b)(2).  However, the provisions of Fed. R. Civ. P. 37 "must be read in light of the provisions of the Fifth Amendment that no person shall be deprived of property without due process of law". *Flaks v. Koegel*, 504 F.2d 702, 709 (2d Cir. 1974).

Fed. R. Civ. P. 55(b)(2) governs the entry by the court of a default judgment. *Badian v. Brandaid Commc'ns Corp.*, No. 03 Civ. 2424(DC), 2004 WL 1933573, at * 2 (S.D.N.Y. Aug. 30, 2004) (quotation omitted). Rule 55(b)(2) does not set forth standards to be applied in determining when a party is entitled to a judgment by default. *Id.* However, various factors may be considered in making the determination of whether a default judgment should be entered under Rule 55(b)(2), including:

> [T]he amount of money potentially involved; whether material issues of fact or issues of substantial public importance are at issue; whether the default is largely technical; whether plaintiff has been substantially prejudiced by the delay involved; and whether the grounds for default are clearly established or are in doubt. Furthermore, the court may consider how harsh an effect a default judgment might have; or whether the default was caused by a good-faith mistake or by excusable or inexcusable neglect on the part of the defendant.

*Id.* (quotation omitted).

The decision whether to enter a default against a party is within the "sound discretion of a district court." *Palmieri v. Town of Babylon*, 277 Fed. Appx. 72, 74 (2d Cir. 2008). However, "courts have expressed '[a] clear preference' for cases 'to be adjudicated on the merits.'" *Hounddog Prods., L.L.C. v. Empire Film Grp., Inc.*, 767 F. Supp. 2d 480, 486 (S.D.N.Y. 2011) (quoting *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001)); *See Badian*, 2004 WL 1933573 at * 2 (quotations omitted) (stating that the "Second Circuit has made clear its preference that litigation disputes be resolved on the merits, not by default."). Default judgment is a sanction that is so drastic that "it is not ordinarily imposed unless the disobedience has been willful, or in bad faith, or otherwise culpable." *Id.* (quotation omitted). It is well established that default judgments are disfavored and "should be reserved by a trial court as a final, not a first, sanction imposed on a litigant." *Pecarsky*, 249 F.3d at 174 (quotation omitted).

Plaintiff improperly cites the three factor standard found in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 98 (2d Cir. 1993) as the only considerations used by courts to evaluate whether a

8

defendant's misconduct warrants entry of default. (See Plaintiff's Motion at PP. 11, ¶ 3). The *Enron Oil Corp.* standard should be considered, but is actually the standard courts use when considering whether to vacate a default judgment. *Badian*, 2004 WL 1933573 at * 2. Furthermore, *Enron Oil Corp.*, the case that **Plaintiff cites** to argue for default judgment against Defendants, states that "[u]nder the caselaw, all doubts [as to whether a default should be set aside] must be resolved in favor of trial on the merits." 10 F.3d at 98.

In addition to the presumption that matters should be resolved by a trial on the merits, the court's use of sanctions must be tempered by due process. *Cine Forty-Second St. Theatre Corp. v. Allied Artists Pictures Corp.*, 602 F.2d 1062, 1066 (2d Cir. 1979). The harshest sanctions are inappropriate if the failure to comply was due to a party's inability to comply or to circumstances beyond the party's control. *Id.* In order to warrant terminating sanctions, the party's conduct must have been due to willfulness, fault, or bad faith. *Id.*; *EEOC v. Lockheed Martin*, Civil Nos. 05-00479 SPK-LEK, 05-00496 SPK-LEK, 2007 WL 1521252, at * 9 (D. Haw. May 22, 2007).

Defendants address each of the three *Enron Oil Corp.* factors in the argument below. *See* 10 F.3d at 98.

## 1. Defendants' Default Was Not Willful

Defendants – including Jaffrey – did **not**, as Plaintiff's counsel asserts, "derail this case". (Plaintiff's Motion at PP. 9, ¶ 3). Jaffrey has had financial issues and immigration issues throughout the course of this litigation, but he has continually made efforts to move forward and defend against Plaintiff's allegations.

This matter was delayed starting September 12, 2013, due to Defendants' inability to pay their original counsel and their original counsel withholding Defendants' case file. The file was held by Defendants' original counsel despite original counsel being fully aware of the pending

9

litigation in this matter.  Defendants were without their case file until late July 2014 and without counsel for approximately five months because they simply could not afford to pay attorney's fees.  However, Defendants were not the only party in this matter to cause delay.  On February 7, 2014, **both parties** submitted a joint request for an extension to conduct discovery and depositions.  Defendants' inability to pay previous counsel in this matter and Jaffrey's issues with his immigration status were both matters that Defendants had to address and try to fix.  Jaffrey was forced to sell his property and leave the country due to his immigration status.

In *Rosario v. Anson*, Civil Action No. 9:12-cv-1506 (GLS/CFH), 2014 WL 4418052, at *1 (N.D.N.Y. Sept. 8, 2014), the court denied defendants' request to award sanctions against the plaintiff pursuant to Fed. R. Civ. P. 37(b)(2)(C) due to the plaintiff's failure to attend her deposition. "In deciding an appropriate sanction, 'the court may consider the full record . . . [specifically] the willfulness of the non-compliant party; the reasons for the noncompliance; the efficacy of lesser sanctions; the duration of the non-compliance; and whether the party has been warned of the consequences of non-compliance." *Id.* at * 4 (quotations omitted). Although the plaintiff had been warned of the consequences of non-compliance with the scheduling order and the date of the scheduled deposition, the court found that the plaintiff presented reasons for his noncompliance, namely that he lacks the economic means to travel to New York as well as a leg injury, and his actions did not warrant sanctions. *Id.*

Jaffrey, like the plaintiff in *Rosario*, was unable to attend his deposition. *See* 2014 WL 4418052 at *1.  Jaffrey was unable to attend his deposition due to his immigration status and his L-1 Visa expiring.[3]  Jaffrey immediately notified defense counsel, Ms. Denenberg, when he found

---

[3] As stated above in Section III, A – there is case law that supports the proposition that courts may allow a deponent to be deposed outside of the country via telephone or other remote means when they cannot legally be in the country due to their immigration status.

out that his L-1 Visa would be expiring because of a technical deficit in his application to renew his L-1 Visa.  Defense counsel, in turn, immediately informed Plaintiff's counsel of Jaffrey's immigration status and inability to attend his deposition.  This information was relayed on August 15, 2014 – six days before Jaffrey's scheduled deposition.  However, after learning that Jaffrey would not be able to attend his deposition, **Plaintiff refused to sit for his own deposition on August 20, 2014.  Plaintiff gave no explanation as to why he could not sit for his deposition.**

Under Fed. R. Civ. P. 30, there is no requirement as to the order in which the depositions must be conducted. *See* N.Y. C.P.L.R. § 3106 (McKinney 2014).[4]  There is also no requirement that one deponent is tied to the other. *See* N.Y. C.P.L.R. § 3106; *See* Fed. R. Civ. P. 30.  In fact, case law suggests that both parties do not have to conduct depositions on a reciprocal or simultaneous basis "in the interests of fairness". *Allis-Chalmers Corp. v. U.S. Steel Corp.*, 405 N.Y.S.2d 924, 924 (N.Y. 1978) (citation omitted).  "The parties are directed to expeditiously complete all pretrial depositions alternating witnesses to be examined until completion . . . ." *Id.* at 926.  The parties are expected to confer in good faith to resolve the manner of conducting discovery and disclosure. *Id.*

Defense counsel tried to ensure the expeditious completion of pretrial depositions and discovery in this matter by giving Plaintiff's counsel (1) the option to depose an alternate person

---

[4] N.Y. C.P.L.R. § 3106(a) and (d) state:

    (a) Normal priority. After an action is commenced, any party may take the testimony of any person by deposition upon oral or written questions. Leave of the court, granted on motion, shall be obtained if notice of the taking of the deposition of a party is served by the plaintiff before that party's time for serving a responsive pleading has expired.

    (b) Designation of deponent. A party desiring to take the deposition of a particular officer, director, member or employee of a person shall include in the notice or subpoena served upon such person the identity, description or title of such individual. Such person shall produce the individual so designated unless they shall have, no later than ten days prior to the scheduled deposition, notified the requesting party that another individual would instead be produced and the identity, description or title of such individual is specified. If timely notification has been so given, such other individual shall instead be produced.

11

and (2) an alternative means by which to depose Jaffrey.  It was Plaintiff's counsel that refused to produce Plaintiff and, therefore, Plaintiff who impeded the discovery process.  In sum, Defendants' default was not willful, at most it was excusable neglect.  Even if the Court feels that there was a default, such default would only apply to Jaffrey and Plaintiff.  It would not apply to any other named Defendant in this matter.

## 2.  Ignoring the Default Judgment Would Not Prejudice Plaintiff

Plaintiff has failed to articulate the prejudice that would result if default judgment was not entered against Defendants in this matter.

Plaintiff argues that he is prejudiced by the burden of every delay to the resolution of his case.  However, "delay standing alone does not establish prejudice." *Enron Oil Corp.*, 10 F.3d at 98 (citation omitted).  Additionally, the fact that Plaintiff did not go forward with his deposition but instead waited to file Plaintiff's Motion suggests that further delay will not prejudice him. *See id.*  Plaintiff has offered no proof or explanation to support his claim that he has incurred "costs of travel in anticipation of depositions that Defendants and their counsel have repeatedly postponed at the last moment." (Plaintiff's Motion at PP. 14, ¶ 2).  Plaintiff is currently Of Counsel at the firm of Byrne Poh LLP, located in New York. The Plaintiff's factual summary gives no examples of an instance where Plaintiff made a special trip from another state or city to be present for a deposition within New York. In fact, Plaintiff failed to appear at his own scheduled deposition on August 20, 2014.

## 3.  Defendants Have Meritorious Defenses

### a.  *Arbitration Required if Employment Agreement Enforceable*

As articulated in detail below, Defendants contend the Employment Agreement is not enforceable because it was falsely made and the signature of Wingate Capital was forged. However, if this court finds the Employment Agreement to be a valid and binding contract, these proceedings must be immediately suspended while the parties submit to arbitration as required by the contract. Section 15 of the Employment Agreement states:

> **15.  ARBITRATION**  Any dispute or controversy arising under or in connection with this Agreement shall be settled exclusively by binding arbitration, as an alternative to civil litigation and without any trial by jury to resolve such claims, conducted by a single arbitrator, mutually acceptable to Employer and Executive, sitting in a location selected by Employer within twenty-five (25) miles from the main office of Employer, in accordance with the rules of the American Arbitration Association's National Rules for the Resolution of Employment Disputes then in effect. Judgment may be entered on the arbitrator's award in any court having jurisdiction.

### b.  *Plaintiff's First Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted*

Plaintiff's Amended Complaint purports to state a claim for breach of contract. The validity and enforceability of that contract is essential to this claim. Yet, Plaintiff has not produced – and even admits it cannot produce – the original contract.

Where the existence or contents of a document, which include any signatures it contains, are in dispute, the "best evidence rule" requires production of the original document, to protect against perjury, fraud, inaccuracies, or mistakes in copying. *Schozer v. William Penn Life Ins. Co. of N.Y.,* 84 N.Y.2d 639, 643–44 (App. 1994); *Matter of Saxton,* 673 N.Y.S.2d 625, 626-27 (Surr.Ct.Broome Co.1998).  The contract is critical to proof of the claim. For that very reason, the court must require Plaintiff to produce the original Employment Agreement.

Plaintiff failed to produce the original contract or provide an explanation as to why this court should accept an alleged reproduction of the original contract. As set forth above, the allegations contained in Plaintiff's Amended Complaint are insufficient to support such a claim.

### c. *Plaintiff's Second Cause of Action Fails to State a Claim Upon Which Relief Can Be Granted*

Plaintiff's Amended Complaint purports to state a claim for quantum meruit. Plaintiff broadly alleges he performed services for Defendants, yet utterly fails to provide this court or the Defendants with any proof of, or explanation regarding, what those services allegedly were. Defendants cannot recall Plaintiff providing any legal services to them individually or in their corporate capacities.[5]

Plaintiff failed to produce any evidence of actually performing services to Defendants. As such, the allegations contained in Plaintiff's Amended Complaint are insufficient to support such a claim.

### d. *Plaintiff Failed to Allege or Sustain Any Damages Caused by Defendants or for which Defendants Are Legally Responsible*

Plaintiff alleges damages in the amount of "at least $2,612,500, plus interest, costs, and attorney's fees." (Amended Complaint at PP. 7). However, it is unclear what the claimed damages are for or how Defendants are legally responsible for them. Defendants are unable to articulate with specificity why they are not legally responsible because Plaintiff did not explain the alleged damages calculation. Further, Plaintiff's asserted damages have changed throughout this litigation.[6] In any event, Plaintiff has not provided any explanation of the damages sought.

---

[5] Plaintiff was a partner of defendant USDFM. The documentary evidence establishes that all legal services for this entites were performed by Kaye Scholar.
[6] Even Plaintiff is not certain as to what his damages are, as evidenced by the amended complaint changing the damages allegations.

Defendants deny assenting to the Employment Agreement and further deny ever paying a monthly salary to Plaintiff. However, Plaintiff's amount of alleged damages is less than the alleged monthly salary multiplied by the number of months Plaintiff allegedly worked but did not receive a salary.

### e.  *Employment Agreement Unenforceable Due to Forgery of Syed Jaffrey's Signature*

Forgery is the act of fraudulently making a false document or altering a real one to be used as if genuine. *Forgery*, Black's Law Dictionary (9th ed. 2009). New York defines forgery as the false making, completing, or altering of a written instrument with intent to defraud, deceive, or injure another. New York PL § 170.05. No valid contract comes into existence when a party's signature to an agreement has been forged. *Orlosky v. Empire Sec. Systems, Inc.*, 230 A.D.2d 401, 657 N.Y.S.2d 840 (3d Dept. 1997); *Ticor Title Guarantee Co. v. E.F.D. Capital Group Inc.*, 621 N.Y.S.2d 128 (3d Dept. 1994).

A forged signature renders a contract void ab initio. *Opals on Ice Lingerie v. Body Lines Inc.*, 320 F.3d 362, 370 (2d Cir. 2003) citing *Orlosky v. Empire Sec. Systems, Inc.*, 230 A.D.2d 401, 403, 657 N.Y.S.2d 840, 842 (3d Dept. 1997); *Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 2004 WL 1406076 (S.D. N.Y. 2004); *Mota v. Imperial Parking Systems*, 2010 WL 3377497, at * 12 (S.D. N.Y. 2010); *Beckwith v. Beckwith*, 99 A.D.3d 1122, 952 N.Y.S.2d 796 (3d Dept. 2012).

A triable issue of fact exists as to whether a party actually executed a document when he or she denies execution, the notary and witnesses to the document, if any, were interested persons, and there is no evidence that the party who claims their signature was forged took action consistent with his or her purported contractual obligations. *McKenna v. Double G Development Corp.*, 674 N.Y.S.2d 356 (1st Dept. 1998).

15

Here, Jaffrey denies placing his signature on the Employment Agreement.  Jaffrey denies authorizing Plaintiff, or anyone else, to place his signature on the Employment Agreement. While Jaffrey cannot explain how a signature appearing to be his was placed on the document, he suspects it was through Plaintiff's manipulation – physical or electronic – of documents bearing Jaffrey's authentic signature.

Jaffrey did not assent to the Employment Agreement.  Defendant Wingate, a purported party to the Employment Agreement, did not assent to the Employment Agreement. The Employment Agreement was wholly drafted and executed – in its entirety – by Plaintiff, Gary Walpert.

### f.  *Employment Agreement Unenforceable Because of False Making*

Plaintiff falsely made the Employment Agreement when he drafted the complete written instrument in its entirety which purports to be an authentic creation of Jaffrey, but which is not because Jaffrey did not authorize its creation. Further, Plaintiff forged Jaffrey's signature on the Employment Agreement, but Jaffrey never assented to the signature. Jaffrey did not sign the Employment Agreement and he did not authorize Plaintiff to sign the Employment Agreement on his behalf.

Plaintiff's false making of the Employment Agreement violates New York PL § 170.00(4) which defines false making as:

> "A person "falsely makes" a written instrument when he  makes  or draws a complete written instrument in its entirety, or an  incomplete  written  instrument, which purports to  be an  authentic creation of its ostensible maker or drawer, but which is not such either because the ostensible maker  or  drawer is fictitious or because, if real, he did not authorize the making or drawing thereof.

Jaffrey did not assent to the Employment Agreement.  Defendant Wingate, a purported party to the Employment Agreement, did not assent to the Employment Agreement.  The

Employment Agreement was wholly drafted and executed – in its entirety – by Plaintiff, Gary Walpert.

### g. *Employment Agreement Unconscionable; Terms Unreasonably Favorable to Drafter (Plaintiff)*

Assuming, *in arguendo*, that the Employment Agreement was signed by an authorized agent or representative of Wingate Capital, Inc., and further assuming that the contract is otherwise valid, this court should find the Employment Agreement unenforceable due to unconscionability.

Generally, both procedural and substantive unconscionability must be present to render a contract unenforceable in New York. *Hojnowski v. Buffalo Bills, Inc.*, 995 F. Supp. 2d 232, 239 (W.D.N.Y. 2014). Under New York law, an unconscionable contract has been defined as one "which is so grossly unreasonable or unconscionable in light of the mores and business practices of the time and place as to be unenforcible [sic] according to its terms." *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (1988) (internal citations omitted).

Further, the contract must generally be "both procedurally and substantively unconscionable when made—i.e., some showing of an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Id.* (internal citations omitted). "[P]rocedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *David v. No. 1 Mktg. Serv., Inc.,* 979 N.Y.S.2d 375, 378–79 (2d Dept. 2014) (quoting *Simar Holding Corp. v. GSC,* 928 N.Y.S.2d 592 (2d Dept. 2011)).

Regarding Defendants' claim of substantive unconscionability, the terms of the Employment Agreement set forth an annual salary to Plaintiff of not less than $900,000 in

exchange for Plaintiff providing services as Executive Vice President and General Counsel of Wingate Capital, Inc. However, Plaintiff did not actually provide any legal services to Defendants.

Section 3 of the Employment Agreement reads that "Executive will devote all of his business time, attention, skill, and efforts to the faithful performance of his duties under this Agreement." The Employment Agreement also reads that "Executive may continue to practice law for outside clients as Of Counsel to a private law firm of his choosing, as long as such representation does not unreasonably interfere with, or create a conflict of interest with respect to, the performance of his duties for Employer." During the thirty-six calendar months which Plaintiff alleges the Employment Agreement was in effect, Plaintiff continued to work as Of Counsel/Partner for Byrne Poh LLP.

Defendants are unaware of any legal services provided to any of the Defendants by Plaintiff for the benefit of Wingate Capital, Inc. In order for the Employment Agreement to be enforceable, consideration must be exchanged by *both parties*. While Plaintiff adamantly asserts he is entitled to receive at least $75,000 per month for the thirty-six months he was allegedly employed by Defendant Wingate Capital, Inc., he did not provide any legal services to Defendant Wingate Capital, Inc. during that time.[7] Thus, the Employment Agreement is substantively unconscionable because even by its terms, the Agreement, drafted by Plaintiff himself, extremely favors Plaintif.

Regarding Defendants' claim of procedural unconscionability, Defendants had no meaningful choice to accept the provisions of the Employment Agreement. In fact, Plaintiff did not provide Defendants with the opportunity to assent to the Employment Agreement. Plaintiff failed to furnish Defendants with a copy of the Employment Agreement. Plaintiff failed to obtain an authentic signature from Jaffrey or an individual authorized to act on behalf of Wingate Capital,

---

[7] It is significant to note that there is not even a single correspondence, email or other "reminder" seeking his putative compensation. There is not even one form of written document seeking even his first paycheck.

Inc.  The Employment Agreement was not signed by an individual authorized to act on behalf of Wingate Capital, Inc.  Given Plaintiff's command of the law, surely he would ensure a $900,000 contract was executed by someone with proper authority on behalf of Wingate Capital, Inc.

Given the magnitude of favorability for Plaintiff, the ambiguous description of the services to be performed in exchange for the annual salary of $900,000, and the fact that Defendant did not assent to the Agreement, the Court should find the Employment Agreement unenforceable on grounds of unconscionability.

### h.  Plaintiff Breached Employment Agreement and Non-Compete

The Employment Agreement submitted by Plaintiff to this court references "Appendix A – Non-Disclosure, Non-Solicitation, and Non-Competition Agreement" which Plaintiff has not furnished to Defense counsel or, to our knowledge, to the court. Plaintiff likely breached the terms of the non-competition agreement by providing full-time legal services to other parties during the course of his alleged employment with Defendant Wingate Capital, Inc.

## C.  DEFENDANT WINGATE'S COUNTERCLAIM FOR COMMERCIAL RENT

Assuming, *in arguendo*, the Employment Agreement which Defendants contend was falsely made in its entirety and forged by Plaintiff is enforceable, then Defendant Wingate Capital, Inc. must be entitled to commercial rents of $2,000.00 plus a reasonable facilities fee per month for the thirty-six months of the contract. (Employment Agreement, §3(b)).

Under the waiver doctrine, "a party may, by words or conduct, waive a provision in a contract or eliminate a condition in a contract which was inserted for his benefit." *Bigda v. Fischbach Corp.*, 898 F. Supp. 1004, 1013 (S.D.N.Y. 1995) aff'd, 101 F.3d 108 (2d Cir. 1996)

citing *Oleg Cassini, Inc. v. Couture Coordinates, Inc.*, 297 F.Supp. 821, 830 (S.D.N.Y.1969) (Herlands, J.).

No waiver can have occurred here, however, because Section 11 of the Employment Agreement states, "No term or condition of this Agreement shall be deemed to have been waived, nor shall there be any estoppel against the enforcement of any provision of the Agreement, except by written instrument of the party charged with waiver or estoppel. No such written waiver shall be deemed a continuing waiver unless specifically stated therein, and each such waiver shall operate only as to the specific term or condition waived and shall not constitute a waiver of such term or condition for the future as to any act other than that specifically waived." (Employment Agreement, §11(c)).

Therefore, Defendant Wingate Capital, Inc. asserts a counterclaim in the amount of $72,000.00 plus reasonable facilities fees due to damages incurred as a result of Plaintiff's failure to pay the agreed upon rent for leasing commercial office space from Defendant Wingate Capital, Inc.

In sum, Defendants have multiple meritorious claims and defenses in this matter and Plaintiff's Motion should be denied.

### D.  PLAINTIFF IS NOT ENTITLED TO A TURNOVER ORDER OR ASSET ATTACHMENT

Plaintiff is not entitled to a turnover order pursuant to N.Y. C.P.L.R. § 5225(a) or a prejudgment attachment pursuant to N.Y. C.P.L.R. § 6201.

Plaintiff argues that the Court should enter a turnover order pursuant to N.Y.C.P.L. § 5225(a) to "direct a Judgment-Debtor to transfer assets into New York to satisfy a judgment" and cites *Clarkson Co. Ltd. v. Shaheen*, 533 F. Supp. 905 (S.D.N.Y. 1982) and *Interpool Ltd. v. Patterson*, 890 F. Supp. 259, 269 (S.D.N.Y. 1995) in support of this argument.  However, both

20

*Shaheen* and *Patterson* can be distinguished from this matter because there had already been a trial and a final judgment entered in *Shaheen* and *Patterson* when the turnover orders were issued in those matters. *See Clarkson Co. Ltd. v. Shaheen*, 660 F.2d 506, 510-11 (2d Cir. 1981); *Patterson*, 890 F. Supp. at 262. Unlike *Shaheen* and *Patterson*, there has been no trial or final judgment in this case and Defendants have certainly not had an opportunity to argue their claims and defenses.

It would be unfair and unjust to grant Plaintiff a turnover order against Defendants when there has been no litigation or hearing examining the facts of this matter and determining whether Plaintiff's claims are meritorious or whether Plaintiff can support the damages he alleges.

In addition, the Court should deny Plaintiff's request for attachment of Defendants' property.

Attachment is the seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment. *Attachment*, Black's Law Dictionary (9th ed. 2009). The plaintiff must show a viable cause of action and the probability that it will succeed on the merits, that one or more grounds exist for attachment as set forth in N.Y. C.P.L.R. § 6201, and that the amount demanded from the defendant exceeds all counterclaims known to the plaintiff. *VisionChina Media Inc. v. Shareholder Representative Servs., LLC*, 967 N.Y.S.2d 338, 345 (N.Y. App. 2013) (finding that the mere fact the defendant, a Chinese entity, was a foreign corporation not authorized to do business in New York was not enough, by itself, to warrant an attachment). Furthermore, "[a]ttachment is a harsh remedy, and is construed narrowly in favor of the party against whom the remedy is invoked." *Id.* The decision to order an attachment rests within the discretion of the court. *Id.*; *See also Capital Ventures Intern. v. Republic of Argentina*, 443 F.3d 214, 222 (2d Cir. 2006) (stating that an attachment "clothes the creditor with such extraordinary power over his

debtor's estate, that it should only be granted upon full and satisfactory evidence that the application is well founded . . . .").

Plaintiff has shown no evidence that Defendants lack sufficient assets to satisfy a potential judgment. Additionally, the sale of Jaffrey's residence and assets was completely public – not secret, as Plaintiff alleges. Plaintiff has not sufficiently established that his cause of action will succeed on the merits, nor has Plaintiff addressed Defendants' counterclaim regarding Plaintiff's unpaid rent with respect to any calculation for attachment.

Plaintiff's request for a turnover order, pursuant to N.Y. C.P.L.R. § 5225(a), and a prejudgment attachment, pursuant to N.Y. C.P.L.R. § 6201, should be denied.

## IV.   **CONCLUSION**

WHEREFORE, for the above stated reasons, Defendants, Jaffrey and Wingate Capital, Inc. a/k/a Wingate Capital New York, and US Defense Fund Management LLC ["USDFM"], by and through counsel, Messner Reeves LLP, respectfully request that the Court allow Defendant Jaffrey to take his deposition by remote means pursuant to Fed. R. Civ. P. 30 and deny Plaintiff's Motion and grant Defendants any other relief that the Court deems proper and just.

Dated: New York, New York
      October 2, 2014

MESSNER REEVES LLP

Deborah J. Denenberg DD-9024
733 Third Avenue, 15th Floor
New York, NY 10017
Tel: (646) 663-1860
Fax: (646) 663-1895
ddenenberg@messner.com
*Attorney for Defendants*

# EXHIBIT A



VISA UNITED STATES OF AMERICA

Issuing Post Name
BERN
Surname
JAFFREY
Given Name
SYED MOHAMMAD RAZI HAIDER

Control Number
201002600100001

Visa Type /Class
R   L1

Passport Number
45843671

Sex
M

Birth Date
26APR1959

Nationality
SWDN

Entries
M

Issue Date
26FEB2010

Expiration Date
22DEC2012

0100

Annotation

CLEARANCE RECEIVED 12-FEB-2010   58982479
PN-DELTA SEARCH LABS INC
P#-EAC-10-058-51077              PED-22DEC2012

VNUSAJAFFREY<<SYED<MOHAMMAD<RAZI<HAIDER<<<<<
45843671<6SWE5904262M1212226L1BEN02SZL910866

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY WALPERT,

                    Plaintiff,

               - against --

SYED JAFFREY and WINGATE CAPITAL, INC.
a/k/a WINGATE CAPITAL NEW YORK, and US
DEFENSE FUND MANAGEMENT, LLC,

                    Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13 Civ. 05006 (PGG)

AFFIDAVIT OF SYED MOHAMMED
RAZI HAIDER JAFFREY

I, Syed Mohammed Razi Haider Jaffrey, state the following to be a true and accurate:

1.     My name is Syed Mohammed Razi Haider Jaffrey. I am a named defendant in the above-captioned matter.

2.     My address is 19 Girard Road, Winchester, MA 01890.

3.     I was in the United States from approximately 3-6-2010 to 7-27-2014.

4.     I was on L-1 Visa sponsored by Delta Search Labs. This L-1 Visa permitted me to work for Delta Search Labs in the United States.

5.     I sold my home (11 Elden Drive, Saddle River, NJ 07458) on July 23, 2014.  My house was first listed for sale on or about from November 2011, but was unable to sell it until July 2014.  The house listing was publicly advertised and was on multiple websites, including streeteasy.com.

6.     Plaintiff knew about the fact that I was selling my home since the date it was listed. He further knew that I was also selling many of the contents.

7.     Since selling my home, I have paid every attorney, including Michael A. Freeman, who previously represented me in this dispute. Upon receipt of the final payment in July 2014, Mr. Freeman released my file in this matter.

8.     I am actively working with my immigration attorney Matthew Maiona, Esq. to resolve my visa issues and hope to return to the United States as soon as possible.

9.     I am eager to defend the baseless allegations by plaintiff through his attorneys. I would be willing to appear for a deposition here in London and pay for the airfare for plaintiff's counsel to travel here. I would also be willing to appear via video conference or Skype.

Pursuant to 8 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 2nd day of October, 2014.

Syed Mohammed Razi Haider Jaffrey

# EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

GARY WALPERT,

                        Plaintiff,

               - against –

SYED JAFFREY and WINGATE CAPITAL, INC.
a/k/a WINGATE CAPITAL NEW YORK, and US
DEFENSE FUND MANAGEMENT, LLC,

                     Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

13 Civ. 05006 (PGG)

AFFIDAVIT OF DEBORAH J.
DENENBERG IN OPPOSITION TO
PLAINTIFF'S MOTION FOR
DEFAULT JUDGMENT

DEBORAH J. DENENBERG, an attorney duly admitted to practice before the Courts of

this State, aware of the penalties of perjury, affirms the truth of the following:

      1.      I am Of Counsel to the law firm of Messner Reeves LLP, attorneys for defendants

Syed Jaffrey and Wingate Capital, Inc. a/k/a Wingate Capital New York, and US Defense Fund

Management, LLC (collectively "Defendants").  As such, I am fully familiar with the facts and

circumstances set forth herein.

      2.      I submit this Affirmation and the accompanying Memorandum of Law in opposition

to Plaintiff's motion seeking a default judgment against all the Defendants.  It is respectfully

requested that the subject motion be denied in its entirety as the only putatively defaulting

Defendant is Syed Jaffrey who was unable to appear for his deposition due to operation of law

(namely, his inability to renew his visa).

      3.      This affirmation is further submitted to correct several misrepresentations by

Plaintiff's counsel.  Counsel attempts to convince the Court that the request for a short adjournment

of the depositions of Plaintiff and Defendant Jaffrey was for reasons other than personal. The depositions were initially scheduled for August 7 for Plaintiff and August 8 for Defendant Jaffrey. Due to an emergency hospital admission of my mother, I requested a short adjournment so I could attend to my mother's medical and emotional needs.

4.     On July 26, 2014, my elderly mother fell and fractured her hip. She underwent hip replacement surgery on July 27, 2014. She was discharged from Long Island Jewish Medical Center on August 1, 2014 and transferred to an in-patient rehabilitation facility. Since this injury, she has been in and out of the hospital because her condition is not stable. Most recently, she was readmitted to LIJ on September 18, 2014 where she continues to be treated in-patient. She has now been diagnosed with aggressive Multiple Myeloma and the treating physicians cannot say when she will be discharged.

5.     This has been a very difficult time for my family. This is the reason why I sought an adjournment of the depositions and, further, why I sought an additional week to respond to Plaintiff's motion seeking a default.

6.     The deposition of Plaintiff was adjourned to August 19; the deposition of Syed R. Jaffrey was rescheduled for August 21; Ali Jaffrey on September 3; and Kamal Jaffrey on September 5. When the "new" dates for these depositions approached, I learned, for the first time, that my client Syed R. Jaffrey was unable to return to the United States due to a visa complication. Upon learning this information, I immediately contacted Plaintiff's counsel to advise him of this issue. I offered to produce one of the other two defense witnesses (Kamal Jaffrey and Ali Jaffrey), who were scheduled for the following week, on the date reserved for Syed R. Jaffrey.

7. Much to my surprise, Plaintiff Counsel not only refused to conduct the deposition of Kamal Jaffrey or Ali Jaffrey on August 21 (the date reserved for Syed R. Jaffrey), but further refused to produce Plaintiff on August 19.

8. It is important to note that Plaintiff is seeking a default against all the named Defendants because Defendant Syed R. Jaffrey was prevented from appearing in person at a deposition scheduled for August 21 by the State Department. He can appear in any venue outside of the United States. He can appear via video conference (i.e. Skype). He is the only Defendant who is prevented from appearing within the United States for a deposition, as the other witnesses are United States citizens. Indeed, Plaintiff should not be able to use this operation of law as a sword against Defendant Jaffrey to his advantage; let alone the other Defendants, who do not have such restrictions.

9. Equally important, Defendant Jaffrey's inability to appear in person in the United States is not grounds for Plaintiff' refusal to appear for his deposition on August 19. To date, there has been no explanation as to why Plaintiff Counsel refused to produce his client on the scheduled date. Plaintiff Counsel's papers are completely silent on this issue.[1] It is respectfully submitted that there are no rules under civil procedure, nor is there case law, upholding a plaintiff's decision to unilaterally refuse to appear for a scheduled (and court ordered) deposition simply because one of the defendants cannot appear in-person in the United States.

10. As explained in detail in the accompanying brief, it would be unfairly prejudicial to all the Defendants to grant Plaintiff a default judgment merely because Defendant Jaffrey cannot appear in person in the United States. Plaintiff will not be prejudiced if his counsel took Defendant

---

[1] Plaintiff's counsel actually attempts to contend that his client has been prejudiced by delay (paragraph 23 of Phillips affirmation). Yet, he conveniently omits that fact that he cancelled Plaintiff's deposition without any explanation and has refused to take the deposition of the other Defendants.

Jaffrey's deposition outside of the United States or via electronic means.  In this regard, Defendant Jaffrey has offered to pay for Plaintiff Counsel's airfare to fly to London to take the deposition in person. Additionally, the other Defendants are ready, willing, and able to appear in person in the United States.

11.     Defendants respectfully request that the Court deny Plaintiff's motion in its entirety because Defendant Jaffrey's default was not willful, ignoring default judgment would not prejudice Plaintiff, and Defendants have meritorious defenses.  Additionally, Defendants request that this Court order the Plaintiff to appear for his deposition and allow Defendant Jaffrey to take his deposition by remote means, outside of the United States, because of his immigration status and his inability to legally return to the United States.


Pursuant to 8 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on this 3rd day of October, 2014.


/s Deborah J. Denenberg
Deborah J. Denenberg, Esq. DD-9024

# EXHIBIT D

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

GARY WALPERT,                                    :

                              Plaintiff,         :        13 Civ. 05006 (PGG)

              -against-                          :        **AFFIDAVIT OF**
                                                 :        **MATTHEW J. MAIONA, ESQ.**
SYED JAFFREY and WINGATE CAPITAL, INC.           :
a/k/a WINGATE CAPITAL NEW YORK, and              :
US DEFENSE FUND MANAGEMENT, LLC,                 :

                              Defendants.        :
                                                 :
------------------------------------------------------------------ X

    I, Matthew J. Maiona, state the following to be a true and accurate statement regarding Mr. Syed

Jaffrey's (Defendant) current immigration status:

    1.    My name is Matthew J. Maiona.  I am a partner at Maiona & Ward, P.C. located at 31

Milk Street, Suite 315, Boston, Massachusetts 02109.  I am an attorney licensed (BBO# 632445) by the

Commonwealth of Massachusetts to practice law as of June 20, 1996.

    2.    I have been practicing immigration law in the Boston area since 1996. My immigration

practice involves all areas of immigration law including but not limited to employment-based non-

immigrant visas and matters regarding lawful permanent residency.  I am a past Chapter Chair for the

New England Chapter of the American Immigration Lawyers Association ("AILA"), as well as current

chair of the Executive Office of Immigration Review Boston ("Boston Immigration Court") Committee

for AILA New England, a media liaison for the national AILA organization and chair of the national

AILA Military Assistance Program Task Force.

    3.    I have been found to be an expert in the area of immigration law by Family & Probate

Courts in Massachusetts and Rhode Island and allowed to testify as such before these Courts.

    4.    My office has been retained by the Defendant to advise him regarding his current

immigration status and his ability to travel to the United States due to that status.

## IMMIGRATION STATUS OF THE DEFENDANT

5.      The Defendant filed an employment-based immigrant visa petition on or about August 10, 2012 pursuant to §203(b)(1)(c) of the Immigration and Nationality Act ("INA"). This immigrant visa petition would have given the Defendant the ability to obtain adjustment of status before US Citizenship & Immigration Services ("USCIS") in order to become a lawful permanent resident (commonly known as a "green card").[1] However, the immigrant visa petition was denied on June 17, 2013 by USCIS.

6.      The Defendant filed a motion to reconsider with the Service on or about July 22, 2013 which was denied on October 30, 2013. Once the Defendant's immigrant visa application was denied, he had no basis for lawful permanent residency in the United States so this application too was denied by USCIS. (*See, Footnote 1*).

7.      Once his immigrant visa application and lawful permanent residency application were denied by USCIS, the Defendant was left without any lawful status to remain in the United States. Immigration attorneys regularly suggest an underlying non-immigrant employment-based visa for an applicant such as the Defendant out of an abundance of caution, should an unexpected denial occur. In reviewing the Defendant's immigration history, it appears that Defendant's then counsel did not have this safety valve in place. An underlying employment-based non-immigrant visa, such as an H-1B specialty worker visa, would have allowed the Defendant to remain lawfully in the United States even in the event of the denial of his immigrant visa and lawful permanent residency.

8.      As no underlying non-immigrant visa was in place, under the Act the Defendant began to accrue unlawful presence as of June 17, 2013 the date both his immigrant visa application and adjustment of status application were denied. *See,* INA §212(a)(9)(B)(i)(I)-(II).[2] The Defendant temporarily stayed the accrual of unlawful presence by filing his motion to reconsider on July 22, 2013, but this attempt

[1] The Defendant did file an application for adjustment of status concurrently with his immigrant visa petition on August 10, 2012 as allowed by USCIS procedures. However, the adjustment of status was automatically denied once the immigrant visa petition was denied by USCIS.
[2] Had the Defendant's appeal been successful, he would not have accrued unlawful presence during the period the appeal was pending.

failed when the motion was denied on October 30, 2013. He was therefore subject to removal (deportation) after October 30, 2013 and had been accruing unlawful presence since June 17, 2013. The Defendant was not lawfully present in the United States as of October 30, 2013 and had accrued over 4 months of unlawful presence. He had no status or right to remain in the United States and was obligated to depart the country or face detention and removal.

## ABILITY TO RETURN TO THE UNITED STATES

9.      Once six months of unlawful presence passes, or after December 17, 2013 in the Defendant's case, the Defendant was subject to a bar from returning to the United States for a period of 3 years which would be triggered once he departed the country. *See*, INA §212(a)(9)(B)(i)(I). Once 12 months had passed, or after June 17, 2014, he would be barred from returning to the United States for a period of 10 years once he departed the country. *See*, INA §212(a)(9)(B)(i)(II).

10.     It is my understanding in speaking to the Defendant that he left the United States in August of 2014 without any knowledge of the bar or its consequences upon his ability to return to the United States. The Defendant believed that he could return to the United States at any time upon securing a visa from a US Consulate abroad. In fact, his departure from the United States triggered the bar under INA §212(a)(9)(B)(i)(I) and (II).

11.     Based upon the above facts, it is my opinion that the Defendant is barred from returning to the United States for a period of a period of 10 years pursuant to INA §212(a)(9)(B)(i)(II) without the issuance of a waiver from the US Department of State/US Consulate.

12.     The Defendant can request a waiver of the ground of inadmissibility he is subject to under INA §212(a)(9)(B)(i)(II) by filing an INA §212(d)(3) waiver and a request for a non-immigrant visa with the US Consulate in his country of residence. The issuance of the waiver would be subject to the discretion of the Consular Officer and is not easily obtained. In my opinion, the Consular Officer

would likely not issue a waiver at this time as the Defendant has only been outside of the United States for one month.  I believe as time passes the likelihood of the waiver being issued will increase.

13.     Based upon the above, it is my opinion that the Defendant would not be able to return to the United States until August 2024 unless he is able to obtain favorable discretion for a waiver prior to that date from a Consular Officer at the US Consulate in the country of his residence.


Pursuant to 8 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.  Executed on this _2ND_ day of October, 2014.

_____
/Matthew J. Maiona, Esq.