UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GARY WALPERT,

              Plaintiff,

    - against -

SYED JAFFREY and WINGATE CAPITAL, INC.
a/k/a WINGATE CAPITAL NEW YORK, and
US DEFENSE FUND MANAGEMENT LLC,

              Defendants.

13 Civ. 05006 (PGG)

---

**PLAINTIFF GARY WALPERT'S PROPOSED FINDINGS OF FACT
AND CONCLUSIONS OF LAW**

**FENSTERSTOCK & PARTNERS LLP**
Blair C. Fensterstock (BF-2020)
Evan S. Fensterstock (EF-2084)

100 Broadway, 8th Floor
New York, New York 10005
(212) 785-4100

*Counsel for Plaintiff Gary Walpert*

I.     INTRODUCTION

On July 18, 2013, Gary Walpert ("Plaintiff" or "Walpert") commenced this action with claims for breach of contract, unjust enrichment, quantum meruit, conversion, and violations of New York Labor Law Sections 190, *et seq.* to recover unpaid wages, liquidated damages, pre-judgment interest, attorneys' fees, and costs. Plaintiff filed an Amended Complaint on January 8, 2014, which Defendants answered on January 21, 2014. On August 18, 2014, Plaintiff's counsel requested a default judgment and other appropriate sanctions for Defendants' refusal to participate in discovery while liquidating assets and moving them offshore. Defense counsel responded and a conference with the Court was held on September 4, 2014. On September 12, 2014, Plaintiff filed a motion for a default judgment (Dkt. Nos. 53-54), Defendants filed an opposition (Dkt. 57), Plaintiff filed his reply (Dkt. No. 56) and the Court held a hearing on Plaintiff's motion on December 1 and 2, 2014.

By Memorandum Opinion and Order dated August 28, 2015, the Hon. Paul G. Gardephe granted Plaintiff's motion for a default judgment based on Defendants' willful misconduct and deliberate obstruction. Judge Gardephe found that Defendants breached the Employment Agreement ("Agreement") that commenced as of June 11, 2010, continued for a period of 36 months, and provided for a salary of not less than $900,000 per year. Op. at 39-40. Additionally, Judge Gardephe found that the Defendants were liable in quantum meruit and unjust enrichment for the value of the legal services that Plaintiff rendered to Jaffrey outside of the Agreement. Op. at 42, 45-46. Judge Gardephe also concluded that the Defendants were liable on the New York Labor Law claim for at least 31 months of labor or services performed pursuant to the Agreement. Op. at 43. Finally, Judge Gardephe ruled that the Defendants were liable on Plaintiff's conversion claim. Op. at 45.

Judge Gardephe referred this matter to the Magistrate for an inquest on damages concerning Plaintiff's claims and for a determination as to whether Wingate Capital, Inc. ("Wingate") is entitled to an offset for unpaid rent.

II.    PROPOSED FINDINGS OF FACT

1.     Gary Walpert is a Harvard educated lawyer with over 40 years of experience. He was a partner at K&L Gates LLP, Wilmer Cutler Pickering Hale and Dorr LLP, and Fish & Richardson P.C. Plaintiff is a Harvard Law School and Massachusetts Institute of Technology graduate with forty (40) years of legal experience, a former partner of prestigious law firms including K&L Gates LLP, Wilmer Cutler Pickering Hale and Dorr LLP, and Fish & Richardson P.C., and was recruited by Defendants because of his particular skillset. His billing rate for work at the time was typically $700 per hour. Affidavit of Gary Walpert (hereinafter "Walpert Aff.") ¶¶ 3-10.

1

2.      In 2006 or 2007, Jaffrey retained Walpert to work on issues relating to intellectual property for Delta Search Labs ("Delta Search"), a company Jaffrey then controlled. Walpert performed legal work for Jaffrey on Delta Search until approximately 2010. Op. at 2; Walpert Aff. ¶¶ 8-9.

3.      In 2010, Jaffrey recruited Walpert to be general counsel for Wingate and for a to be created private equity start-up fund, later named US Defense Fund Management ("USDFM"). *Id.* Walpert Aff. ¶ 11.

4.      In July 2010, Walpert entered into an Employment Agreement with Defendants Jaffrey and Wingate pursuant to which Walpert was employed as Executive Vice President and General Counsel. Op at 2-3; Walpert Aff. ¶ 12.

5.      Under the Agreement, employment was to begin June 11, 2010 and continue for a period of thirty-six calendar months, and was set to continue thereafter until terminated in accordance with the Agreement. See Walpert Aff. ¶ 12, Exhibit A.

6.      Pursuant to the Employment Agreement, Plaintiff was to be paid a salary of no less than $900,000 per year. *Id.*

7.      Plaintiff's primary work for Wingate was the formation of two limited liability companies and other investment opportunities, including USDFM and Collingwood. Op. at 4; Walpert Aff. ¶ 16.

8.      Plaintiff also worked on personal matters for Jaffrey, and for Jaffrey and his wife, including, *inter alia*, a lawsuit by Quinn Emanuel against Jaffrey personally in connection with $6 million in lost fees as well as a dispute Jaffrey had with an interior decorator relating to work done by the decorator that Jaffrey had disputed and not paid for, work for Ovalia Resorts ("Ovalia") that related to a suit Jaffrey had against HSBC, and a lawsuit that one of Ovalia's employees had against Jaffrey. *Id.* Walpert Aff. ¶ 20.

9.      Plaintiff was to be paid additional amounts for this personal work. Op. at 41.

10.     Plaintiff worked approximately 642 hours on matters not included in the Agreement including:

| Entity | Tasks | Hours |
|---|---|---|
| Delta Search Labs | Meetings at Delta Search Labs regarding mold problems including discussions of landlord negligence and culpability, insurance company negotiations and claims, and remediation of property issues. | 150 |
| Delta Search Labs | Efforts regarding state labor law violations. | 10 |
| Delta Search Labs | Meetings and negotiations with Ropes and Gray regarding billing for patent work. | 10 |

2

| | | |
|---|---|---|
| **Delta Search Labs** | Resolving accounts receivable issues. | 10 |
| **Delta Search Labs** | Miscellaneous legal matters. | 40 |
| **Ovalia Resorts** | General strategy meetings with Jaffrey with regard to HSBC. | 25 |
| **Ovalia Resorts** | Attend court ordered HSBC mediation. | 8 |
| **Ovalia Resorts** | Review of HSBC court and Jaffrey's supporting documents. | 35 |
| **Ovalia Resorts** | HSBC litigation related meetings. | 10 |
| **Ovalia Resorts** | Work related to Hassain Wage suit. | 5 |
| **Quinn Emanual (HSBC)** | Document review. | 35 |
| **Quinn Emanual (HSBC)** | Meetings with New Jersey counsel in New York and New Jersey. | 30 |
| **Quinn Emanual (HSBC)** | Discussions related to litigation with Jaffrey. | 5 |
| **Collingwood** | Conferences with Jaffrey | 15 |
| **Collingwood** | Conferences with Mr. Griner | 25 |
| **Collingwood** | Review legal documents | 45 |
| **Collingwood** | Conferences with Admiral, Hussain, etc. | 45 |
| **Misc.** | Miscellaneous activities | 139 |
| **TOTAL** | | 642 |

Walpert Aff. ¶ 21.

11.     Walpert worked at Wingate's executive offices located at 601 Lexington Ave, New York, NY 10022 until Wingate was evicted from the premises. Op. at 3; Walpert Aff. ¶ 15.

12.     During the time of his employment at Wingate, Plaintiff also continued to work part-time for the law firm Byrne Poh, an arrangement that was memorialized in the Agreement: "Employer agrees that Executive may continue to practice law for outside clients as Of Counsel to a private law firm of his choosing, as long as such representation does not unreasonably interfere with, or create a conflict of interest with respect to, the performance of his duties for Employer." Op. at 5; Walpert Aff. ¶ 27.

13.     During the course of Walpert's employment he furnished his office and moved various personal items into it, including a teak desk, teak credenza, leather executive chair, wall art, and other accessories (collectively, the "Office Furnishings") as well as personal and work related documents, valued at approximately $26,600. Walpert Aff. ¶¶ 33-34.

14.     Defendant breached the Agreement by failing to pay Plaintiff wages for over thirty-five months of Plaintiff's labor and services, amounting to at least $2,612,500 in unpaid salary. Op. at 34; Walpert Aff. ¶ 28.

15.     Defendant also did not pay Walpert for any work that he performed for Defendants and others at Jaffrey's direction that fell outside the scope of the Agreement. Op. at 41.

16.     Moreover, after Defendants were evicted from the offices of Wingate for failing to pay rent, Defendants took possession of the Office Furnishings and documents, depriving Walpert of access to and control of them. Op. at 8; Walpert Aff. ¶¶ 33, 34.

17.     In or about March, 2013, Walpert retained Pryor Cashman LLP to bring suit against Defendants. Plaintiff has paid them $125,357.30. Walpert Aff. ¶ 35, Exhibit E.

18.     Walpert then retained Blair Fensterstock and Fensterstock & Partners on or about March 14, 2014. Walpert Aff. ¶ 36. Fensterstock & Partners utilized seven experienced attorneys including three partners and four associates, as well as paralegals over the course of more than a year in this litigation. Plaintiff's fees for those services amount to $428,925 for 866.8 hours of work. See Affidavit of Blair C. Fensterstock (hereinafter "Fensterstock Aff.") ¶ 8, Exhibit 2. Fensterstock & Partners incurred expenses totaling $12,921.71. Fensterstock Aff. ¶ 41.

### III. PROPOSED CONCLUSIONS OF LAW

#### A. Plaintiff is entitled to damages for breach of contract

19.     Pursuant to Judge Gardephe's order, Defendants are liable to Plaintiff for his withheld salary under the Agreement, amounting to thirty-five (35) months and totaling $2,612,500. Op. at 38-40, 42-43.

#### B. Plaintiff is entitled to damages for work performed under quantum meruit and unjust enrichment

20.     Quantum meruit and unjust enrichment are analyzed together under New York law as a single quasi contract claim. *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). "In order to recover in quantum meruit under New York law, a claimant must establish '(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services.'" *Id.* (quoting *Revson v. Cinque & Cinque, P.C.*, 221 F.3d 59, 69 (2d Cir. 2000)). "New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim." *Id.* (citations omitted).

21.     Defendants are liable for damages under both quantum meruit and unjust enrichment since some of the work Plaintiff testified to clearly fell outside the scope of the Agreement. Op. at 42. This includes various instances of work that Plaintiff performed for Jaffrey, Jaffrey's wife, and entities or ventures belonging to Jaffrey. *Id.* The Agreement covers work performed by Walpert on behalf of Wingate and USDFM as "Executive Vice President and General Counsel." As Plaintiff testified in the December 1, 2014 hearing, Walpert performed numerous additional

4

services, for which he expected to be paid, and which Jaffrey asked him to perform, was aware of his performance, and knew that Walpert expected to be paid for such work. Op. at 41.

22. In the period between June 2010 and June 2013, Walpert provided 642 hours of work for Jaffrey and Jaffrey and his wife outside of the Agreement. Walpert Aff. ¶ 20-22, Exhibit B.

23. Walpert billed clients at a rate of $700 per hour during this period. Walpert Aff. ¶ 7. Therefore, Walpert is due $449,400 for services provided to Defendants and related entities outside the scope of the Agreement. Additionally, Plaintiff incurred unreimbursed travel and other expenses related to work for Delta Search totaling $29,519.99. Walpert Aff. ¶ 26, Exhibits C and D.

### C. Defendants Violated New York Labor Law § 193

24. New York Labor Law § 193(1) prohibits employers from making 'any deduction from the wages of an employee' with certain inapplicable exceptions. *Chenensky v. New York Life Ins. Co.*, No. 07 Civ. 11504 (WHP), 2012 WL 234374, at *4 (S.D.N.Y. Jan 10, 2012). See *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011); *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13 CIV. 6573 KBF, 2014 WL 1413532, at *6 (S.D.N.Y. Apr. 10, 2014); *Gomez v. El Rancho de Andres Carne de Tres Inc.*, No. CV 2012-1264 CBA MDG, 2014 WL 1310296, at *9 (E.D.N.Y. Mar. 11, 2014) report and recommendation adopted, No. 12-CV-1264 CBA MDG, 2014 WL 1310299 (E.D.N.Y. Mar. 31, 2014); *Collado v. Donnycarney Rest. L.L.C.*, No. 14 CIV. 3899 GBD HBP, 2015 WL 4737917, at *6 (S.D.N.Y. Aug 10, 2015). New York Labor Law defines "wages" as "earnings of the employee for labor or services rendered, regardless of whether the amount of earnings is determined on a time, piece, commission, or other basis." N.Y.Lab. Law § 190(1). An employee is "any person employed for hire by an employer in any employment." N.Y.Lab. Law § 190(2). An employer is "any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service." N.Y.Lab. Law § 190(3).

25. Judge Gardephe found defendants Jaffrey and Wingate liable to Walpert for violating New York's Labor Law § 193(1). Op. at 42-43. Defendants violated New York Labor Law § 193 by willfully and without justification deducting and failing to pay Plaintiff's salary to which he was entitled, including six months of labor or services in 2010; twelve months of labor or services in 2011; twelve months of labor or services in 2012 (less $50,000 payment from Jaffrey through Delta Search Labs); and at least one full month of labor or services in 2013. Op. at 43.

26. Effective April 9, 2011, the New York legislature passed the Wage Theft Prevention Act, which raised available liquidated damages for violations of New York Labor Law § 198 (1a) from 25% to 100%. *Wicaksono v. XYZ 48 Corp.*, No. 10 civ. 3635 (LAK) (JCF), 2011 WL 2022644, at *6 (S.D.N.Y. May 2, 2011) report and recommendation adopted, No. 10 civ. 3635 (LAK), 2011 WL 2038973 (S.D.N.Y. May 24, 2011). "An employee who prevails on a wage claim is entitled to liquidated damages equal to 100% of the amount of wages found to be due."

5

*Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 366 (2d Cir. 2011). Accordingly, Plaintiff is entitled to 100% liquidated damages for the total sum of his withheld back pay wages of $2,612,500, equaling an additional $2,612,500.

### D. Plaintiff is entitled to conversion damages and punitive damages

27. During the course of Walpert's employment Walpert moved personal items into his office at Wingate, including but not limited to, a teak desk, teak credenza, a leather executive chair, various pieces of wall art and other accessories, which he owned. Walpert Aff. ¶ 33. Walpert also stored personal and work-related documents in his office. *Id.* Jaffrey intentionally and without permission, removed the Office Furnishings from the offices to another location under Jaffrey's control. Walpert Aff. ¶ 34. Jaffrey wrongfully exercised dominion and control over the Office Furnishings and Walpert's documents, depriving Walpert of possession and ownership. Op. at 44. Jaffrey offered no rebuttal evidence on these points and the Court has found them liable on the conversion claim. *Id.* at 45.

28. "A plaintiff who prevails on a conversion claim may recover the value of the property at the time and place of conversion, plus interest." *Seifts v. Consumer Health Solutions LLC*, 61 F.Supp.3d 306, 319 (S.D.N.Y. 2014) (quoting *Wells Fargo Bank, N.A. v. Nat'l Gasoline, Inc.*, No. 10-VC-1762, 2013 WL 1822288, at *10 (E.D.N.Y. 2013)).

29. The uncontested value of the furniture that Walpert used to furnish his office was estimated at $16,600. The following items were among those removed from Plaintiff's office space by Defendant:

| Description | Approximate Value |
|---|---|
| 8ft Teak Desk | $6000 |
| High back, black leather executive chair | $5000 |
| Teak credenza | $3000 |
| Large Print – Hunt Scene | $800 |
| Venetian paints x 2 | $400 x 2 |
| Plycraft chair with curved, sweeping, bent wood arms | $1000 |
| Total | $16,600 |

Walpert Aff. ¶ 33

30. Additionally, approximately 30 boxes of books, client materials, notes, forms, patent application materials, and other work-related documents, many irreplaceable, were removed from Walpert's office and remain in Plaintiff's possession. The value of this work product is estimated at $10,000. Walpert Aff. ¶¶ 33-34.

31. Additionally, punitive damages may be awarded for conversion claims. *See MacQuesten General Contracting, Inc. v. HCE, Inc.*, 296 F.Supp.2d 437, 446-47 (S.D.N.Y. 2003) (a subcontractor was awarded punitive damages against the contractor who locked him out of the worksite and took improper possession of the subcontractor's tools). Punitive damages may be recovered when a defendant acts with "malice or reckless or willful disregard of the

6

plaintiff's right." *Doo Nam Yang v. ACBL Corp.*, 427 F.Supp.2d 327, 341 (S.D.N.Y. 2005) quoting *Ashare v. Mirkin, Barre, Saltzstein, & Gordon P.C.*, 106 Misc.2d 866, 435 N.Y.S.2d 438, 441 (N.Y.Sup. 1980).

32. Jaffrey acted with reckless and willful disregard of Plaintiff's rights when he knowingly caused Walpert's property to be removed from the Wingate offices without informing Walpert. Fensterstock Aff. ¶ 44, Exhibit 14 at 48. Additionally, Jaffrey later refused to respond to queries from Walpert as to the location of the property. Therefore, Plaintiff should be awarded punitive damages of $500,000.

### E. Plaintiff is Entitled to Reasonable Attorneys' Fees

33. Under New York Labor Law, Walpert is entitled to "all reasonable attorneys' fees." N.Y. Lab. Law § 198(1-a). In assessing reasonable attorney's fees, the court may consider prevailing market rates, the court's own knowledge of private firm hourly rates, and consider the reasonable number of hours required by a case. *Gurung v. Malhotra*, 851 F.Supp.2d 583, 596 (S.D.N.Y. 2012). "The hourly rates used in determining a fee should be what a reasonable, paying client would be willing to pay. This rate should be in line with those rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Jara v. P.N.Fin., Inc.*, No. 10 CIV. 6274 PAE HBP, 2014 WL 4388515, at *6 (S.D.N.Y. Sept. 4, 2014) *report and recommendation adopted*, No. 10 CIV. 6274 PAE HBP, 2014 WL 5100222 (S.D.N.Y. Oct 10, 2014) (internal quotations omitted).

34. Walpert retained Fensterstock & Partners on or about March 14, 2014. Walpert Aff. ¶ 36. Fensterstock & Partners utilized seven experienced attorneys including three partners and four associates, as well as paralegals over the course of more than a year in this litigation. Mr. Fensterstock is a litigator of good reputation with decades of experience in employment law. Fensterstock Aff. ¶¶ 2, 4, Exhibit 1. Plaintiff's fees for those services amount to $428,925 for 866.8 hours of work. See Fensterstock Aff. ¶42, Exhibit 2. Fensterstock & Partners incurred expenses totaling $12,921.71. Fensterstock Aff. ¶ 41.

35. In addition, Walpert had disbursements to Pryor Cashman for legal fees relating to this matter totaling $125,357.30. Walpert Aff. ¶ 35, Exhibit E. Plaintiff is therefore awarded $567,204.01 in attorneys' fees and expenses.

### F. Plaintiff is entitled to prejudgment interest

36. According to New York Law, Walpert is entitled to prejudgment interest in addition to liquidated damages. N.Y. Lab. Law § 198(1-a). "Because state liquidated damages are punitive in nature, a plaintiff awarded this form of damages may also recover pre-judgment interest." *Galeana v. Lemongrass on Broadway Corp.*, No. 10 Civ. 7270 GBD MHD, 2014 WL 1364493 at *11 (S.D.N.Y. Apr. 4, 2014); *Collado v. Donnycarney Rest. L.L.C.*, 2015 WL 4737917, at *8. The statutory interest rate is 9%. N.Y.C.P.L.R. § 5004. The employment agreement became effective June 11, 2010, and obligated Jaffrey to pay Walpert $900,000 per year on a monthly basis for three years. The minimum amount of compensation owed was $2,612,500. Utilizing

the $900,000 per year number from 2010 to August 28, 2015 yields interest amounting to $779,625.

| YEAR | AMOUNT | INTEREST RATIO | % YEAR | COMPOUND | TOTAL |
|---|---|---|---|---|---|
| 2010 | $900,000 | .09 | 7/12 | 5 | $236,250 |
| 2011 | $900,000 | .09 | 1 | 4 | $324,000 |
| 2012 | $812,500 | .09 | 1 | 3 | $219,375 |
| TOTAL | | | | | $779,625 |

### G. Conclusion

For all the foregoing reasons, this Court awards damages against defaulting defendants Jaffrey and Wingate, jointly and severally, in the amount of $7,577,349 as follows:

1. $2,612,500 in unpaid salary plus $29,519.99 in unreimbursed expenses;
2. $2,612,500 in liquidated damages;
3. $449,400 for services provided to Defendants and related entities outside the Agreement;
4. $26,600 for conversion of the furnishings and Plaintiff's irreplaceable work documents;
5. $779,625 in pre-judgment interest calculated through August 28, 2015;
6. $567,204.01 in attorneys' fees; and
7. $500,000 in punitive damages.